# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON O'REILLY, RAHUL BAKSHI, MUSTAPHA SALAUDEEN, WAI TAM, and RISHIDHAR VANGAPELLY, | Case No. _____ |
| Plaintiffs, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | **FEDERAL LAW CLAIMS** |
| KYNDRYL HOLDINGS, INC., | |
| Defendant. | |

**FEDERAL LAW CLAIMS**

1. **Discrimination: Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2 et seq.)**
2. **Retaliation: Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3 et seq.)**
3. **Discrimination: Age Discrimination in Employment Act (29 U.S.C.A. § 623(a) et seq.)**
4. **Retaliation: Age Discrimination in Employment Act (29 U.S.C.A. § 623(d) et seq.)**
5. **Retaliation: Family Medical Leave Act (29 U.S.C. § 2615(a)(2))**
6. **Discrimination: Americans with Disabilities Act (42 U.S.C. § 12112)**
7. **Retaliation: Americans with Disabilities Act (42 U.S.C. § 12203)**
8. **Violation of Medical Privacy Rights: Americans with Disabilities Act (42 U.S.C. § 12112(d)(3)(B))**

**NEW YORK STATE LAW CLAIMS**

9. **Discrimination: New York State Human Rights Law (N.Y. Exec. Law § 296(a))**
10. **Whistleblower Retaliation (N.Y. Lab. Law §740(2)(a))**
11. **Negligent Hiring, Retention, and Supervision**

**NEW YORK CITY LAW CLAIMS**

    **12. Discrimination: New York City Human Rights Law (N.Y.C. Admin. Code §8–107(1)(a))**

**CALIFORNIA STATE LAW CLAIMS**

    **13. Discrimination: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940 et. seq.)**
    **14. Failure to Prevent Discrimination and Retaliation: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940 et. seq.);**
    **15. Retaliation: Fair Employment and Housing Act (Cal. Govt. Code §§ 12940 et. seq.); and**
    **16. Retaliation: California Labor Code § 1102.5**

**DEMAND FOR JURY TRIAL**

Plaintiffs Aaron O'Reilly, Rahul Bakshi, Mustapha Salaudeen, and Rishidhar Vangapelly ("Plaintiffs") respectfully allege as follows against Kyndryl Holdings, Inc. ("Defendant" or "Kyndryl"):

<u>**INTRODUCTION**</u>

1.    Plaintiffs are former Kyndryl cybersecurity professionals who Kyndryl unlawfully terminated as part of its campaign targeting workers based on their race, national origin, age, disability, and whistleblowing activities.

2.    Plaintiffs Rahul Bakshi, Mustapha Salaudeen, Wai Tam, and Rishidhar Vangapelly were cybersecurity analysts at Kyndryl with decades of distinguished experience between them. Despite performance metrics that placed them among Kyndryl's top performers, they were targeted

for termination because they were some combination of foreign-born, non-white, and/or over 40 years old.

3.    Plaintiff Aaron O'Reilly was the Associate Director of the Security Intelligence Center for the U.S. He is a white male, and he supervised the high-performing team comprised of the other Plaintiffs.

4.    All of the Plaintiffs were unlawfully fired as part of Kyndryl's efforts to eliminate foreign-born, non-white, disabled, and older workers from its work force, and replace them with younger, white, non-disabled, American-born workers.

5.    After months of disparate treatment, Kyndryl informed Plaintiff O'Reilly in late 2023 that it would be firing several workers from his team, even though the targeted workers were high performers. When Plaintiffs complained about Kyndryl's conduct, the company temporarily reinstated the fired workers, and conducted a sham investigation into their claims.

6.    During the "investigation," Kyndryl officials retaliated against each of them – altering performance reviews, scrutinizing their activities, and publicly disparaging them. The terminations of the team members were "reinstated" in April 2024, and Plaintiff O'Reilly was placed on "administrative leave" shortly thereafter for trumped up claims that he violated company policies.

7.    Though the claims against O'Reilly were later proven to be unsubstantiated, he was nevertheless terminated, due to his advocacy for his team members and because Kyndryl learned that he too was a member of a protected class – a disabled worker.

8.    Plaintiffs' experiences demonstrate Kyndryl's wanton disregard for the federal and state anti-discrimination laws that protect workers from the type of conduct Kyndryl officials endorsed. Plaintiffs have suffered damages, including lost wages and severe emotional distress, and bring this action to seek redress for the harms caused by Kyndryl's discriminatory and retaliatory conduct.

**PARTIES**

9.     Plaintiff O'Reilly is over the age of forty (40), and at all times relevant to this lawsuit resided in Tennessee.  He began working for Kyndryl in November 2021.

10.     Plaintiff Bakshi is South Asian American and over the age of forty (40) and was born in India. At all times relevant to this lawsuit he resided in Virginia. Plaintiff Bakshi was a Kyndryl employee from the company's inception in November 2021.

11.     Plaintiff Tam is Chinese American and over the age of forty (40) and was born in China. At all times relevant to this lawsuit he resided in California. Plaintiff Tam began working for Kyndryl in 2022.

12.     Plaintiff Salaudeen is Black naturalized American citizen who was born in Nigeria and is over the age of forty (40).  At all times relevant to this lawsuit, he resided in Texas. Plaintiff Salaudeen was a Kyndryl employee from the company's inception in November 2021.

13.     Plaintiff Vangapelly is South Asian and was born in India. At all times relevant to this lawsuit he resided in Texas. Plaintiff Vangapelly was a Kyndryl employee from the company's inception in November 2021.

14.     Defendant Kyndryl is a Delaware corporation with its principal place of business in New York, New York. It is the largest information technology infrastructure services provider in the world. In 2024, it had revenue in excess of $16 billion.

15.     Defendant Kyndryl employs more than twenty employees in the United States, within the meaning of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL). Kyndryl is a covered entity or employer within the meaning of these statutes.

16.     Plaintiffs are informed and believe and thereon allege that Defendant employs more than five employees in California, within the meaning of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't C. § 12940 *et seq*. Defendant is a covered entity or employer within the meaning of the FEHA.

## VENUE AND JURISDICTION

17.    This Court has subject matter jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §1331, 29 U.S.C. 626(b), and 28 U.S.C. § 1343.

18.    This Court has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367.

19.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because Kyndryl has its headquarters in New York, New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.    In accordance with the appropriate regulations, codes, and statutes, Plaintiffs have exhausted their administrative remedies by filing timely Charges of Discrimination with the Equal Employment Opportunities Commission ("EEOC"). Plaintiffs requested and received right-to-sue notices from the EEOC as to Defendant. Mr. Tam also filed with the California Civil Rights Department ("CRD") and received a right-to-sue notice. Such filings occurred within 180 days of the unlawful employment practices alleged in this Complaint. More than 60 days have passed since the filing of these charges.

21.    In accordance with the appropriate regulations, codes, and statutes, Plaintiffs have exhausted their administrative remedies by notifying Defendant of the claims herein.

22.    All of the acts alleged herein were in the nature of continuing violations and/or continuing torts. All of the misconduct alleged herein was part of the same continuous pattern of discrimination and harassment, and at least some of the misconduct occurred within 180 days of the date Plaintiffs filed their claims with the EEOC and within three years of the date Plaintiff Tam filed claims with the CCRD.

## GENERAL ALLEGATIONS

### Background

23.    Kyndryl was established in November 2021 as a spinoff from IBM's Global Technology Services Group (GTSG). Many IBM employees were moved to Kyndryl at the time

of the spinoff. Shortly after the spinoff, Kyndryl hired Plaintiff O'Reilly as the Associate Director of the Security Intelligence Center for the U.S. Plaintiff O'Reilly supervised a team of about twenty people, including Plaintiffs Bakshi, Vangapelly, Salaudeen, and Tam.

24.    Each of the Plaintiffs is an experienced cyber security professional.

a.    Plaintiff O'Reilly is an Army veteran who began developing his cyber security expertise in the 82nd Airborne Division while stationed in the U.S. and Afghanistan, and as a Line of Site Antenna Operator in Iraq. Plaintiff O'Reilly holds over a dozen other current cyber security certifications. At Kyndryl, Plaintiff O'Reilly led a global team of cyber security analysts charged with identifying and mitigating potential security breaches, including Kyndryl's first major cybersecurity incident.

b.    Plaintiff Bakshi holds a master's degree from the University of Maryland. He began his cybersecurity career over a decade ago serving federal agencies through IT consulting firms in the Washington, D.C. area. He worked as a Senior Security Intelligence Analyst at Kyndryl. Plaintiff Bakshi is of Indian origin and a naturalized American citizen.

c.    Plaintiff Vangapelly earned his master's in management information systems at the University of Texas at Dallas in 2016 and began working for IBM as a Security Intelligence Analyst that same year. He was instrumental in transitioning the IBM cybersecurity infrastructure from IBM to Kyndryl during Kyndryl's spinoff, and in training new employees on Kyndryl systems. Plaintiff Vangapelly was born in India.

d.    Plaintiff Salaudeen has worked in cyber security for nearly twenty years and holds nine active cyber security certifications. He worked at different times as a Forensic Analyst and Security Intelligence Analyst at Kyndryl. Plaintiff Salaudeen is a Black man from Nigeria.

e.  Plaintiff Tam holds a master's degree in electro-mechanical computer technology and began working for IBM in 2005. Plaintiff Tam became a full-time Kyndryl employee in 2022 where he worked as a Security Intelligence Analyst. Plaintiff Tam was born in China.

25.  Plaintiffs were responsible for ensuring the safety of Kyndryl's internal systems. They were charged with monitoring the system for cyber security threats, and then identifying, investigating, and resolving those threats. In their roles, Plaintiffs were responsible for, *inter alia*, protecting sensitive data, ensuring continuity of service for Kyndryl's customers (which include U.S. federal agencies), and preventing financial crimes against the company.

26.  Kyndryl assessed the performance of Plaintiffs and other workers in these roles by measuring the number of "tickets" the worker resolved, how quickly the tickets were resolved, and the completeness of the resolution. By Kyndryl's performance metrics, Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly were top performers; they were regularly among the workers who resolved the most tickets per month, and were relied upon to train other analysts or review their reports for compliance with company policies.

27.  Despite their performance, Kyndryl unlawfully targeted Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly for termination because of their national origin, their race, and their age. Kyndryl also paid Plaintiffs Vangapelly and Salaudeen significantly less than their peers, and significantly less than the U.S.-born workers hired to replace them, based on their national origin and race. Plaintiff O'Reilly, who called out Kyndryl's conduct to his superiors, was later terminated for standing up against Kyndryl's unlawful conduct.

***Kyndryl's Discriminatory Animus Toward Workers In Protected Classes***

28.  In late 2023, Plaintiff O'Reilly became aware of an unlawful plan to terminate workers with disabilities and workers who had taken protected leave.

29.  Earlier in 2023, Kyndryl terminated a non-white, foreign-born Vice President and replaced him with two white males, Ryan Kenna and Archie Carnes, who became Plaintiff

O'Reilly's supervisors. Plaintiff O'Reilly had previously worked with Mr. Kenna as a manager before Mr. Kenna's promotion to the director role. During their time working together, Mr. Kenna made numerous discriminatory and derogatory comments about their foreign-born, non-white direct reports. Kenna called the India-based team "worthless." He also asked Plaintiff O'Reilly about terminating a Black contractor from Haiti who worked for their team, musing about whether he could use unsubstantiated allegations as the basis for the decision.

30.    Mr. Kenna also regularly expressed unwarranted and inappropriate criticism of Plaintiffs Bakshi and Tam, who reported to Plaintiff O'Reilly. Mr. Kenna's hostility became so pronounced that Plaintiff O'Reilly instructed Plaintiffs Bakshi and Tam not to join calls with Mr. Kenna and to communicate with his team in writing because he believed Mr. Kenna's conduct constituted harassment.

31.    Mr. Kenna, Mr. Carnes, and Randy Warner, Kyndryl's Chief Information Security Officer, all routinely disparaged Plaintiffs and other foreign-born, non-white workers, and treated them in derogatory and dismissive ways. This occurred even when Plaintiffs identified significant security concerns. For example, when Plaintiff Bakshi identified Kyndryl employees who were using Kyndryl systems to access unlawful, sexually explicit material, including bestiality, Mr. Carnes made light of his findings by cracking "Dr. Doolittle" jokes at staff meetings.

32.    Similarly, when Plaintiff Vangapelly identified evidence of child sexual abuse material being accessed on company systems, he and Plaintiff O'Reilly were admonished for documenting the findings in writing because, if discovered, they might have an adverse impact on the company's stock price and image.

33.    The pattern of criticizing the non-white, older, and foreign-born workers ultimately culminated in Kyndryl's decision to terminate several of them – including Plaintiffs Bakshi, Tam, Vangapelly, and Salaudeen, among others – on December 1, 2023. Kyndryl informed Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly that they had been identified for "redeployment" – i.e. terminated – and that they needed either to find different jobs within Kyndryl or look outside the company for employment. The same day, Kyndryl revoked their access to Kyndryl systems.

34.     Plaintiff O'Reilly received notice from Kyndryl in the days before Plaintiffs learned of their termination that multiple members of his cybersecurity team were to be "benched" – i.e. terminated – and the list included only foreign-born persons of color, including Plaintiffs Bakshi, Tam, Salaudeen, and Vangapelly. Plaintiff O'Reilly also learned that the India cyber security team was being eliminated, which meant approximately half a dozen other non-U.S. born workers of color were being terminated.

35.     Plaintiff O'Reilly also learned at this time of a broader termination scheme being rolled out by Kyndryl leaders. In addition to eliminating the foreign-born workers on his team, Mr. Carnes instructed Plaintiff O'Reilly to begin a process to terminate all employees who had taken medical leave. He was informed that these employees were to be terminated a few months later to "avoid suspicion" that the decision was related to their leave.

36.     Plaintiff O'Reilly recognized that Kyndryl's conduct was discriminatory, and likely unlawful. Despite claims that the company was reducing "headcount," Kyndryl hired younger, American-born employees at higher salaries. In conversations with the members of his team who were terminated, several reported to him that they believed Kyndryl targeted them for being older, foreign-born, and/or non-white.

37.     In the days that ensued, multiple terminated team members complained to Kyndryl human resources that their terminations were unlawfully motivated by discriminatory intent.

38.     O'Reilly made a similar report. He reported his concerns to Stacie Creech, who was the director of a different team, and more senior than him. She instructed him to report his concerns to Kyndryl's "employee concerns" portal, which he did. Plaintiff O'Reilly submitted a written complaint about Kyndryl directors executing a plan to terminate workers based on their race, national origin, age, and disability.

***Kyndryl's Retaliation Against Plaintiffs***

39.     After receiving the complaints of discrimination, Kyndryl paused the terminations. Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly were ordered to return to work, while Kyndryl purported to investigate their claims of discrimination.

40.     However, in the period that ensued, Kyndryl doubled down on its discriminatory conduct. Kyndryl subjected Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly to intense and daily scrutiny during this period that other cyber security workers did not face. Even though they still reported to Plaintiff O'Reilly, Mr. Carnes, who was more managerial and business-oriented than technical, would pull Plaintiff Bakshi, Salaudeen, Tam, and Vangapelly's reports on an almost daily basis to interrogate their work and suggest that there were errors where there were none. Mr. Carnes even went so far as to edit and add insulting commentary to some of Plaintiff O'Reilly's year-end evaluations of the other Plaintiffs. For example, on Plaintiff Salaudeen's performance evaluation, Mr. Carnes wrote "I do not agree with these ratings [from Mr. O'Reilly] and do not believe Mustapha is capable of making any progress at all." On Plaintiff Bakshi's performance evaluation, Mr. Carnes wrote, "Rahul fundamentally lacks the skill or talent to succeed." Mr. Carnes did not do this to any employees who did not complain of discrimination.

41.     Additionally, Plaintiffs Bakshi and Tam applied to several positions within Kyndryl for which they qualified, as was instructed in their "redeployment" notice. On information and belief, Mr. Warner prevented them from progressing through the hiring process.

42.     By reporting his concerns about Kyndryl's discrimination, Plaintiff O'Reilly also became a target. He was systematically iced out by the cybersecurity leadership team. Where he, Carnes and Warner had previously been in regular contact and had a positive working relationship, now they took days to call Plaintiff O'Reilly back, if they responded at all. When Plaintiff O'Reilly attended a conference in San Francisco with Mr. Carnes, Mr. Warner, and Mr. Kenna, they overtly refused to speak with or even look at Plaintiff O'Reilly.

43.     By April 2024, Plaintiffs' fates at Kyndryl had long since been determined. That month, Plaintiff O'Reilly received the only negative performance evaluation he ever received at Kyndryl and the other Plaintiffs' terminations were "reinstated."

44.     After his performance review, Kyndryl placed Plaintiff O'Reilly on administrative leave, falsely accusing him of vague violations of company policy.

45.     For Plaintiff O'Reilly, Kyndryl's aggressive and discriminatory conduct had an immediate and particularly pronounced effect on his health. The company's efforts to push him out triggered a health episode related to a preexisting disability that Plaintiff O'Reilly had successfully managed for the past decade.

46.     On May 23, 2024, while on administrative leave, Plaintiff O'Reilly disclosed his disability to Kyndryl Human Resources. Kyndryl subsequently disclosed his personal medical information, including information about his disability, to unauthorized individuals. Days later, Kyndryl sent an outside "evidence collection team" to Plaintiff O'Reilly's house, where they demanded his work computer – an unnecessary and aggressive escalation of the company's conduct.

47.     Kyndryl's investigation of the alleged "policy violations" later cleared Plaintiff O'Reilly of wrongdoing, but Kyndryl never informed O'Reilly he was cleared to return to work, and O'Reilly became yet another Kyndryl employee terminated – for resisting an unlawful, discriminatory scheme to fire workers based on their membership in a protected class, and for being a disabled worker.

## **FEDERAL LAW CLAIMS**

### **FIRST CLAIM FOR RELIEF: RACE, COLOR, AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
### **(42 U.S.C. § 2000e-2 et seq.)**
### **(By Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly)**

48.     Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

49.     Defendant employed Plaintiffs.

50.     Under Title VII, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a).

51.     In perpetuating the above-described acts and omissions, Defendant, its agents, servants and/or employees, engaged in unlawful discrimination on the basis of race, color, and/or national origin, in violation of Title VII.

52.     Plaintiffs are all individuals born outside the United States.

53.     Plaintiffs Bakshi and Vangapelly are of South Asian national origin, from India. Plaintiff Salaudeen is Nigerian and Black. Plaintiff Tam is a Chinese-born American citizen.

54.     Defendant's decision to terminate Plaintiffs Bakshi, Salaudeen, Tam, and Vangapelly was substantially motivated by their race, and/or national origin.

55.     The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' rights from the first act to the latest action.

56.     As a direct and proximate result of Defendant's unlawful acts, Plaintiffs have suffered and continue to suffer injury, including physical, mental and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation and indignity, as well as other physical, mental, and emotional reactions, damage their good name, reputation, standing in the community and other non-economic damages, and accordingly are entitled to an award of compensatory damages.

57.     Plaintiffs are entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**SECOND CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. § 2000e-3 et seq.)**

**(By All Plaintiffs)**

58.    Plaintiffs O'Reilly, Bakshi, Salaudeen, Tam, and Vangapelly incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

59.    Title VII prohibits Defendant from retaliating against any employee because he engaged in protected activity. Resisting and/or complaining of discrimination or harassment are protected activities under Title VII. Defendant and its agents, servants, and/or employees engaged in unlawful retaliation in violation of Title VII.

60.    Plaintiffs engaged in protected activities. Each of the Plaintiffs complained that Kyndryl acted in an unlawful discriminatory manner by targeting workers for termination based on their race and/or national origin.

61.    Defendant, its agents, and/or employees retaliated against Plaintiffs on the basis of their protected activities and took material and adverse employment actions against Plaintiffs. Any reasonable employee would have found Defendant's retaliation as a form of dissuasion from making, reporting, or supporting a charge of discrimination and engaging in overall protected activity.

62.    Plaintiffs' protected activity was a substantial or motivating factor in any retaliatory acts taken by Defendant.

63.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' rights from the first act to the latest action.

64.    As a direct and proximate result of Defendant's unlawful acts, Plaintiffs have suffered and continue to suffer injury including loss of wages, physical, mental and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, mental suffering, shock, humiliation and indignity, as well as other physical, mental, and emotional reactions, damage to their good names, reputation, standing in the community and other non-economic damages, and accordingly they are entitled to an award of compensatory damages.

65.     As a further legal result of the above-described conduct of Defendant, Plaintiffs have suffered incidental, consequential, and special damages in an amount according to proof.

66.     Plaintiffs are entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

67.     Finally, as a direct and proximate result of the aforesaid unlawful acts of Defendant, Plaintiffs have suffered stress-related health consequences. Plaintiffs claim damages for such health problems in an amount to be proven at time of trial.

### THIRD CLAIM FOR RELIEF: DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
### (29 U.S.C.A. § 623(a) et seq.)
### (By Plaintiffs Bakshi, Salaudeen, and Tam)

68.     Plaintiffs Bakshi, Salaudeen, and Tam incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

69.     The ADEA makes it unlawful for an employer to discriminate against an individual because of the individual's age. 29 U.S.C. § 623(a). The ADEA's prohibition against age discrimination is limited to individuals over 40 years of age. 29 U.S.C. § 631(a).

70.     At all times relevant to this action, Plaintiffs O'Reilly, Bakshi, Salaudeen, and Tam were over 40 years of age.

71.     In violation of Plaintiffs' right under the ADEA, Defendant discriminated against Plaintiffs on the basis of their age by altering the terms and conditions of their employment and targeting them for termination because they were over forty years old.

72.     The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' rights from the first act to the latest action.

73.     As a direct and proximate result of Defendant's unlawful acts, Plaintiffs have suffered and continue to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

74.     As a further proximate result of Defendant's unlawful acts, Plaintiffs have suffered and continue to suffer injury, including emotional pain and suffering, and they are accordingly

entitled to an award of compensatory damages.

75.    Plaintiffs are also entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**FOURTH CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT**
**(29 U.S.C.A. § 623 (d) et seq.)**
**(By Plaintiff O 'Reilly)**

76.    Plaintiff O'Reilly incorporates by reference each and every paragraph of the complaint as though fully set forth herein.

77.    The ADEA prohibits Defendant from retaliating against any employee because he engaged in a protected activity. Resisting and/or complaining of discrimination or harassment on the basis of age are protected activities under the ADEA.

78.    Defendant and its agents, servants, and/or employees, engaged in unlawful retaliation in violation of the ADEA.

79.    Plaintiff engaged in protected activity.

80.    Defendant, its agents, and/or employees retaliated against Plaintiff on the basis of his protected activity and took material and adverse employment actions against him.

81.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

82.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

83.    As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and he is accordingly entitled to an award of compensatory damages.

84.    Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**FIFTH CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF THE FAMILY
MEDICAL LEAVE ACT
(29 U.S.C. § 2615(a)(2))
(By Plaintiff O'Reilly)**

85.     Plaintiff O'Reilly incorporates by reference each and every paragraph of the complaint as though fully set forth herein.

86.     The FMLA prohibits Defendant from retaliating against any employee because he engaged in a protected activity. Resisting and/or complaining of disability discrimination are protected activities under the FMLA.

87.     Defendant and its agents, servants, and/or employees, engaged in unlawful retaliation in violation of the FMLA.

88.     Plaintiff engaged in protected activity.

89.     Defendant, its agents, and/or employees retaliated against Plaintiff on the basis of his protected activity, and took material and adverse employment actions against him.

90.     The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' rights from the first act to the latest action.

91.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

92.     As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and he is accordingly entitled to an award of compensatory damages.

93.     Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**SIXTH CLAIM FOR RELIEF: DISCRIMINATION IN VIOLATION OF THE
AMERICANS WITH DISABILITIES ACT
(42 U.S.C. § 12112)
(By Plaintiff O'Reilly)**

94.     Plaintiff O'Reilly incorporates by reference each and every paragraph of the

complaint as though fully set forth herein.

95.    Title I of the ADA, 42 U.S.C. § 12111, et seq. prohibits employers, such as Defendant, from discriminating against an employee on the basis of the employee's disability. The legislative purposes of, and findings for, the ADA are set forth in 42 U.S.C § 12101 and are very broad.

96.    Plaintiff O'Reilly is a qualified person with a disability and was able to perform the essential functions of his job. Defendant treated Plaintiff O'Reilly worse and differently because he had a disability and subjected him to adverse employment actions.

97.    Plaintiff O'Reilly disclosed to Defendant that he had a disability, and shortly thereafter Defendant subjected Plaintiff O'Reilly to a retaliatory investigation, and refused to return him to work after placing him on administrative leave, despite Defendant's investigation uncovering no wrongdoing by Plaintiff O'Reilly.

98.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

99.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff O'Reilly has suffered and continues to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

100.    As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and he is accordingly entitled to an award of compensatory damages.

101.    Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**SEVENTH CLAIM FOR RELIEF: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12203)**
**(By Plaintiff O'Reilly)**

102.    Plaintiff O'Reilly incorporates by reference each and every paragraph of the complaint as though fully set forth herein.

103.    The ADA prohibits employers such as Defendant from retaliating against employees who oppose disability discrimination.

104.    Plaintiff O'Reilly engaged in protected activity by complaining about disability discrimination in writing to Defendant, and Defendant took adverse employment actions against Plaintiff O'Reilly in retaliation for his protected activity.

105.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiffs' rights from the first act to the latest action.

106.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff O'Reilly has suffered and continues to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

107.    As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and he is accordingly entitled to an award of compensatory damages.

108.    Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**EIGHTH CLAIM FOR RELIEF: VIOLATION OF THE MEDICAL PRIVACY RIGHTS PROVIDED BY THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12112(d)(3)(B))**
**(By Plaintiff O'Reilly)**

109.    Plaintiff O'Reilly incorporates by reference each and every paragraph of the complaint as though fully set forth herein.

110.    The ADA provides for a private cause of action against employers who violate their employees' medical privacy rights. The ADA requires "information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record." 42 U.S.C. § 12112(d)(3)(B).

111.    On information and belief, Kyndryl changed the email settings on Plaintiff O'Reilly's work email program in order to automatically forward his emails to certain Kyndryl employees.

112.    Plaintiff was not aware that his email settings were changed in this manner.

113.    After Kyndryl placed Plaintiff on administrative leave, he disclosed via email the fact that he was disabled, and other private medical information about his disability, to Kyndryl officials. Due to Kyndryl's actions, private medical information to Human Resources was also disclosed to individuals who were not authorized to receive Mr. O'Reilly's medical information.

114.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff O'Reilly has suffered and continues to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

115.    As a further proximate result of Defendant's unlawful acts, Plaintiff has suffered and continues to suffer injury, including emotional pain and suffering, and he is accordingly entitled to an award of compensatory damages.

116.    Plaintiff is entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

## NEW YORK STATE LAW CLAIMS

### NINTH CLAIM FOR RELIEF: DISCRIMINATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW
### (N.Y. Exec. Law § 296(a))
### (By All Plaintiffs)

117.    Plaintiffs incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

118.    The New York State Human Rights Law (NYSHRL) makes it unlawful for New York State employers, "because of an individual's age, race, creed, color, national origin, citizenship or immigration status . . . [or] disability . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(a).

119.    Defendant is headquartered in New York, New York and is a covered employer for the purposes of the NYSHRL. Each Plaintiff is a member of one or more the protected classes

identified, and Defendant subjected each Plaintiff to adverse employment actions because of their status as members of protected classes.

120.    As a direct and proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

121.    As a further proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer injury, including emotional pain and suffering, and they are accordingly entitled to an award of compensatory damages.

122.    Plaintiffs are entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

**TENTH CLAIM FOR RELIEF: WHISTLEBLOWER RETALIATION IN VIOLATION OF NEW YORK LABOR LAW**
**(N.Y. Lab. Law §740(2)(a))**
**(By All Plaintiffs)**

123.    Plaintiffs O'Reilly, Bakshi, Salaudeen, Tam, and Vangapelly incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

124.    New York Labor Law §740(2)(a) states that

> an employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety.

125.    Defendant is an employer for the purposes of New York Labor Law §740(2)(a).

126.    At all relevant times, Plaintiffs were employees of Defendant for the purposes of the statute.

127.    Each Plaintiff disclosed to one or more supervisors' conduct by Defendant that each Plaintiff reasonably believed constituted violations of law, rule, or regulation. Each Plaintiff opposed workplace discrimination.

128.    Plaintiffs O'Reilly, Bakshi, and Vangapelly reported the existence of child sexual assault materials and bestiality recordings on Kyndryl servers and in the possession of Kyndryl employees. Defendant retaliated against each Plaintiff after they reported illegal activity.

129.    As a direct and proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

130.    As a further proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer injury, including emotional pain and suffering, and they are accordingly entitled to an award of compensatory damages.

131.    Plaintiffs are entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

## ELEVENTH CLAIM FOR RELIEF: NEGLIGENT HIRING, RETENTION, AND SUPERVISION
### (By all Plaintiffs)

132.    Plaintiffs incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

133.    To establish a cause of action based on negligent hiring, negligent retention, or negligent supervision,

> it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (*Shor v. Touch–N–Go Farms, Inc.,* 89 A.D.3d 830, 831, 933 N.Y.S.2d 686; *see Kaul v. Brooklyn Friends Sch.,* 220 A.D.3d 936, 938, 199 N.Y.S.3d 117) and that there exists a "connection between the defendant's negligence ... and the plaintiff's injuries" (*Roe v. Domestic & Foreign Missionary Socy. of the Prot. Episcopal Church,* 198 A.D.3d 698, 701, 155 N.Y.S.3d 418). "The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring, ... retention, or supervision of the employee" (*McVawcd–Doe v. Columbus Ave. Elementary Sch.,* 225 A.D.3d at 846–847, 207 N.Y.S.3d 669 [alterations and internal quotation marks omitted]).

*Sayegh v. City of Yonkers*, 228 A.D.3d 690, 691, 213 N.Y.S.3d 129, 131 (2024).

134.    Defendant is an employer within the definition of this tort claim.

135.    Defendant had knowledge of Messrs. Warner, Carnes, and Kenna's propensity for discrimination because each Plaintiff made complaints in writing to Defendant's human resources department about the discriminatory actions, and Defendant required each Plaintiff to continue to work under and be discriminated against by Messrs. Warner, Carnes, and Kenna.

136.    Similarly, Mr. O'Reilly made a complaint of retaliation in writing. His complaint was not investigated; rather, Kyndryl management further retaliated against him by lodging false accusations of misconduct against him and then placing him on leave. Kyndryl then put each Plaintiff in a position of foreseeable harm by not taking appropriate action to supervise (or not retain) the bad actors.

137.    As a direct and proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer lost wages, employment benefits, and other compensation, in an amount to be proven at trial.

138.    As a further proximate result of Defendant's unlawful acts, Plaintiffs suffered and continue to suffer injury, including emotional pain and suffering, and they are accordingly entitled to an award of compensatory damages.

139.    Plaintiffs are entitled to statutory attorneys' fees and costs, and other appropriate relief as determined by this court.

## NEW YORK CITY LAW CLAIMS

### TWELFTH CLAIM FOR RELIEF: DISCRIMINATION IN VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW
### (N.Y.C. Admin. Code §8–107(1)(a))
### (By All Plaintiffs)

140.    Plaintiffs O'Reilly, Bakshi, Salaudeen, Tam, and Vangapelly incorporate by reference each and every paragraph of the complaint as though fully set forth herein.

141.    Section 8–107(1)(a) of the NYCHRL makes it an unlawful discriminatory practice for New York City employers or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status,

caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person, to represent that any employment or position is not available when in fact it is available; to refuse to hire or employ or to bar or to discharge from employment such person; or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

142.    At all times relevant to this lawsuit, Defendant was a New York City employer within the meaning of this statute, and Plaintiffs were employees.

143.    Each Plaintiff was a member of, or perceived to be a member of, one or more of the protected classes identified in the statute.

144.    Defendant treated Plaintiff's differently and worse on the basis of their protected class statuses, and subjected them to adverse employment actions, including termination.

## CALIFORNIA STATE LAW CLAIMS

### THIRTEENTH CLAIM FOR RELIEF: DISCRIMINATION BASED ON RACE, NATIONAL ORIGIN, AGE, AND/OR THE INTERSECTION OF THESE PROTECTED CHARACTERISTICS
### (CAL. GOV. CODE §12940(a))
### (By Plaintiff Tam)

145.    Plaintiff Tam realleges and incorporates by reference the foregoing, as though fully set forth herein.

146.    At all times herein mentioned, California Government Code § 12940 *et seq*., was in full force and effect and was binding upon Defendant. Said sections require Defendant to refrain from discriminating against employees because of race, national origin and age, among other things.

147.    At all times herein mentioned, Plaintiff Tam was an employee protected under the FEHA, Cal. Govt. Code § 12926(c). As such, Plaintiff Tam had the right to maintain employment without experiencing discrimination on the basis of race, national origin and/or age.

148.    At all times herein mentioned, Defendant was barred from discriminating in employment decisions on the basis of race, national origin and/or age.

149.    At all times relevant, Plaintiff Tam was an employee of Defendant.

149.    As described herein, Defendant discriminated against Plaintiff Tam on the basis of race, national origin, and/or age by subjecting him to disparate treatment in the terms and conditions of his employment as alleged herein above. Plaintiff Tam's race, national origin, and/or age were substantial motivating reasons for Defendant discriminating against Plaintiff Tam.

150.    Defendant also discriminated against Plaintiff Tam by terminating him.  Plaintiff Tam's race, national origin and/or age were substantial motivating reasons for Defendant terminating him.

151.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiff's rights from the first act to the latest action.

152.    As a direct and proximate result of the discrimination suffered by Plaintiff Tam as described above, he has incurred and will continue to incur, expenses, loss of deferred compensation, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to his damage in an amount according to proof.

153.    As a direct, foreseeable, and proximate result of Defendant's discriminatory actions, Plaintiff Tam has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff Tam's damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

154.    Defendant engaged in conduct with malice, oppression or fraud conducted by one or more officers, directors or managing agents who acted on behalf of Defendant.

155.    On information and belief, an officer, director or managing agent of Defendant had advance knowledge of the unfitness of Messrs. Warner, Carnes and Kenna and employed them with a knowing disregard for the safety of others, the conduct constituting malice, oppression or fraud was authorized by one or more of the officers. Moreover, one or more directors, officers or managing agents of Defendant knew of the conduct constituting malice, oppression or fraud and adopted or approved that conduct after it occurred. As such, punitive damages are warranted.

## FOURTEENTH CLAIM FOR RELIEF: FAILURE TO PREVENT DISCRIMINATION AND RETALIATION
### (CAL. GOV. CODE § 12940(k))
### (By Plaintiff Tam)

156.    Plaintiff Tam realleges and incorporates by reference the foregoing, as though fully set forth herein.

157.    At all times mentioned in this complaint, Government Code § 12940(k) was in full force and effect and binding on Defendant. Under this section, employers have an *affirmative* duty to prevent harassment in the workplace. Cal. Gov. Code §12940(j)(1)

158.    At all times relevant, Plaintiff Tam was an employee of Defendant.

159.    As described above, Plaintiff Tam and other employees repeatedly complained about the discrimination and harassment to which Messrs. Warner, Carnes, and Kenna subjected employees. Despite Defendant having actual knowledge of the discrimination and harassment to which Messrs. Warner, Carnes, and Kenna subjected employees, Defendant failed to take all reasonable steps to prevent harassment, discrimination and retaliation.

160.    The aforementioned conduct of Defendant constitutes a continuing violation of Plaintiff Tam's rights from the first act to the latest action.

161.    As a direct and proximate result of Defendant's failure to prevent discrimination, harassment and retaliation, Plaintiff Tam has incurred, and will continue to incur, expenses, loss of deferred compensation, loss of equity, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to his damage in an amount according to proof.

162.    As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff Tam has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff's damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

163.    On information and belief, an officer, director or managing agent of Defendant had advance knowledge of the unfitness of Messrs. Warner, Carnes, and Kenna and employed them

with a knowing disregard for the safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more of the officers. Moreover, one or more directors, officers or managing agents of Defendant knew of the conduct constituting malice, oppression or fraud and adopted or approved that conduct after it occurred. As such, punitive damages are warranted.

**FIFTEENTH CLAIM FOR RELIEF: RETALIATION**
**(CAL. GOV. CODE § 12940(h))**
**(By Plaintiff Tam)**

164.    Plaintiff Tam realleges and incorporates by reference the foregoing, as though fully set forth herein.

165.    At all times mentioned in this complaint, Government Code § 12940(h) was in full force and effect and was binding on Defendant. This section prohibits employers from retaliating against employees who engage in a protected activity. Cal. Govt. Code § 12940, *et seq.*

166.    At all times relevant, Plaintiff Tam was an employee of Defendant.

167.    Defendant retaliated against Plaintiff Tam by subjecting him to undue and unrelenting criticism after he complained of discrimination, and then terminating him.

168.    As a direct and proximate result of Defendant's retaliation against Plaintiff Tam, Plaintiff Tam has incurred, and will continue to incur, expenses, loss of deferred compensation, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to his damage in an amount according to proof.

169.    As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff Tam has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff Tam's damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

170.    On information and belief, an officer, director or managing agent of Defendant had advance knowledge of the unfitness of Messrs. Warner, Carnes, and Kenna and employed them with a knowing disregard for the safety of others, the conduct constituting malice, oppression or fraud was authorized by one of more of the officers. Moreover, one or more directors, officers or

managing agents of Defendant knew of the conduct constituting malice, oppression or fraud and adopted or approved that conduct after it occurred. As such, punitive damages are warranted.

**SIXTEENTH CLAIM FOR RELIEF: WHISTLEBLOWER RETALIATION**
**(CAL. LAB. CODE § 1102.5)**
**(By Plaintiff Tam)**

171.     Plaintiff Tam realleges and incorporates by reference the foregoing, as though fully set forth herein.

172.     At all times mentioned in this complaint, California Labor Code § 1102.5 was in full force and effect and was binding on Defendant. This section broadly prohibits retaliation against an individual for disclosing information concerning the violation of or noncompliance with any state or federal statute.

173.     As set forth herein, Plaintiff Tam repeatedly reported to Defendant's human resources department that his termination, as well as that of several of his coworkers, was discriminatory.

174.     After Plaintiff Tam complained of discrimination, Defendant retaliated against Plaintiff Tam by subjecting him to heightened scrutiny and eventually terminating him.

175.     As a direct and proximate result of Defendant's retaliation against Plaintiff Tam, Plaintiff Tam has incurred, and will continue to incur, expenses, loss of deferred compensation, benefits, earning capacity, wages, opportunities for employment and advancement, and work experience, all to his damage in an amount according to proof.

176.     As a direct, foreseeable, and proximate result of Defendant's actions, Plaintiff Tam has suffered and continues to suffer humiliation, embarrassment, mental and emotional distress and discomfort, all to Plaintiff Tam's damage in an amount in excess of the minimum jurisdiction of this court, the precise amount to be proven at trial.

177.     On information and belief, an officer, director or managing agent of Defendant had advance knowledge of the unfitness of Warner, Carnes, and Kenna and employed them with a knowing disregard for the safety of others, the conduct constituting malice, oppression or fraud

was authorized by one of more of the officers. Moreover, one or more directors, officers or managing agents of Defendant knew of the conduct constituting malice, oppression or fraud and adopted or approved that conduct after it occurred. As such, punitive damages are warranted.

178.    As a result of Defendant's unlawful acts, Plaintiffs are also entitled to attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray as follows:

179.    That this court award actual and compensatory damages to Plaintiffs for violations of their civil rights under federal law, California and New York state law, and New York City law;

181.    That this Court award declaratory relief to Plaintiffs pursuant to applicable federal law, California and New York state law, and New York City law;

182.    That this Court award injunctive relief to Plaintiffs pursuant to applicable state federal law, California and New York state law, and New York City law;

183.    That this Court award punitive damages to Plaintiffs pursuant to applicable state federal law, California and New York state law, and New York City law;

184.    That this Court award Plaintiffs reasonable attorneys' fees and costs pursuant to applicable federal, California and New York state law, and New York City law, including but not limited to 42 U.S. Code § 12205; 29 U.S. Code § 216; N.Y. Lab. Law §740(2)(a); Cal. Gov. Code § 12965(b); and Cal. Lab. Code  § 1102.5; and upon any other basis as allowed by law;

185.    That Plaintiff be awarded pre-judgment and post-judgment interest on all monies awarded;

186.    That Plaintiff be granted all other relief as allowed by law; and

187.    That Plaintiff be granted all other relief as the Court may deem just and proper.


**PLAINTIFFS DEMAND TRIAL BY JURY.**


DATED: October 8, 2025                    Respectfully Submitted,

OLIVIER & SCHREIBER PC
LAW OFFICES OF WENDY MUSELL



RACHEL BIEN
Rachel@os-legal.com
OWEN MONKEMEIER
Owen@os-legal.com
OLIVIER & SCHREIBER PC
595 E. Colorado Blvd., Suite 418
Pasadena, CA 91101
Tel: (415) 484-0980
Fax: (415) 658-7758

CHRISTIAN SCHREIBER (*pro hac vice* forthcoming)
christian@os-legal.com
OLIVIER & SCHREIBER PC
475 14th Street, Suite 250
Oakland, CA 94612
Tel: (415) 484-0980
Fax: (415) 658-7758

WENDY MUSELL (*pro hac vice* forthcoming)
wmusell@wendymuselllaw.com
KATHERINE SMITH (*pro hac vice* forthcoming)
ksmith@wendymuselllaw.com
BRITTANY SHAMMA (*pro hac vice* forthcoming)
bshamma@wendymuselllaw.com
LAW OFFICES OF WENDY MUSELL PC
66 Franklin Street, Suite 300
Oakland, CA 94607
Tel.: (510) 270-2252
Fax: (510) 228-1391

*Attorneys for Plaintiffs*